2014 VT 4

# State of Vermont v. Edward Nugent

[88 A.3d 429]

No. 13-078

Present: Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.

Opinion Filed January 10, 2014

*Greg Nagurney*, Department of State's Attorneys, Montpelier, and *Vincent Illuzzi*, Essex County State's Attorney, Orleans, for Plaintiff-Appellant.

*David C. Sleigh* and *Kyle L. Hatt* of *Sleigh Law*, St. Johnsbury, for Defendant-Appellee.

¶ 1. **Reiber, C.J.** The State of Vermont appeals from the trial court's grant of defendant's motion for judgment as a matter of law on his civil driver's license suspension. The trial court held that the State did not prove by a preponderance of the evidence that defendant's blood alcohol concentration (BAC) was 0.08 or above at the time he operated a motor vehicle. We affirm the trial court's decision.

¶ 2. The facts are uncontested. On October 6, 2012, at 7 p.m., several witnesses observed as defendant drove his truck off the

road at a curve on Route 2 in Lunenburg, Vermont. The truck was flung across a lawn and over an embankment, managing to knock over a large tree before coming to rest on its side in water. The officer who arrived on scene observed that defendant appeared moderately impaired. Defendant told the officer that he had one beer between 4:30 and 5 p.m., and nothing to drink during the thirty minutes before the crash or afterward. Defendant was taken to the hospital, where a blood test administered at 9:19 p.m. showed a blood alcohol level of 0.137 percent.

¶ 3. The State initiated a civil license suspension proceeding, and a hearing was held on January 17, 2013. Because the police tested defendant's BAC more than two hours after the time of operation, the State was required to prove through relation-back evidence that defendant's BAC was over the legal limit while he was driving. See 23 V.S.A. § 1205(n) (stating that a person's BAC will be presumed to have been over the legal limit while driving if the person's BAC was over the legal limit within two hours of driving).

¶ 4. The State's expert submitted an affidavit and also testified in person that, based on her calculations relating the BAC level taken at the hospital back to the time of the accident, defendant's BAC at the time of operation was 0.172. Defendant objected to the admission of the expert's testimony under Vermont Rule of Evidence 702, arguing that her relation-back calculation methods did not conform to minimum scientific standards and that her estimate was not to a reasonable degree of scientific reliability. The court took defendant's objection under advisement. On cross-examination, defendant questioned the assumptions involved in the expert's calculation, especially the assumption that the alcohol elimination rate was 0.015 percent per hour, on the grounds that elimination rates vary between individuals and the expert could only speculate as to defendant's elimination rate.

¶ 5. The court issued its decision on January 29, 2013. It first ruled that the expert's affidavit and testimony were admissible under the liberal evidentiary rules for civil suspension hearings. See V.R.C.P. 80.5(f)(3) ("Evidence is admissible if it is of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs . . . ."). Further, the court noted that the affidavit "provides prima facie evidence that the test results were accurately evaluated," citing 23 V.S.A. § 1205(h)(1)(D). However, the court ultimately ruled that "the weight of [the expert's]

opinion is insufficient for the Court to adopt her calculation as establishing BAC at time of operation." The court reasoned as follows:

> If 0.015/hr is one rate that occurs on a spectrum, what is the full variation of the spectrum, and where on that spectrum does 0.015 fall? Is it just barely below the mean, so that 51% of people eliminate faster than that, or is it toward the end of the spectrum so that 95% of people eliminate faster than that? Alternatively, if elimination rates used by other experts were applied to the facts of this case, would they also show that [defendant's] BAC was 0.08% or more at the time of operation? While [the expert] may have credible answers to these questions, the answers were not elicited at the hearing.

¶ 6. The court thus granted defendant's motion for judgment as a matter of law[*] and denied the State's motion to reopen evidence. The State now appeals, arguing that the trial court erred in concluding that the evidence was insufficient for the State to meet its burden by a preponderance of the evidence.

¶ 7. ■ As an initial matter, there is a dispute regarding the standard of review. The State argues that whether the preponderance standard was met is a question of law that we review de novo. In the case cited by the State, however, we interpreted a statutory provision: whether a reliable second BAC test was a necessary element of the civil suspension procedure. *State v. Spooner*, 2012 VT 90, ¶ 14, 192 Vt. 465, 60 A.3d 640. In the same case, we also noted that "[u]nder the civil-suspension statute, a trial court is expressly authorized to consider the reliability of testing procedures and the accuracy of results. Whether a test is reliable or accurate is a factual finding." *Id.* ¶ 11 (citing 23 V.S.A. § 1205(h)(1)(D)). Therefore, the trial court's determination of reliability was not a question of law, but rather a question of fact which we review "for clear error, recognizing that the trier-of-fact is in the best position to determine the weight and sufficiency of the evidence presented." *Id.* (quotation omitted).

---

[*] Although framed as a judgment as a matter of law, the court's decision rested on its factual determination that the expert's opinion was not sufficiently reliable to prove that defendant's BAC was 0.08 or more at the time of operation. Therefore, the court's ruling is more properly characterized as a decision on·the merits.

¶ 8. Here, the trial court found the expert's calculation to be unreliable because her assumed alcohol elimination rate of 0.015 percent per hour was speculative. The trial court's conclusion was supported by the expert's testimony, in which she conceded that the elimination rate varies by individual and that she had no scientifically principled way of distinguishing between her assumed elimination rate and different elimination rates offered by other experts in the field. The court emphasized, and we agree, that although "0.015 is commonly used as a rate, and the [court] has probably heard it supported in other hearings," there nonetheless must be "a solid scientific basis" for its use in individual cases.

¶ 9. The expert testified, and the State argues on appeal, that the expert's assumption regarding the elimination rate was reasonable because a majority of people eliminate alcohol faster than 0.015 per hour. The expert's assumption may well have been reasonable. We can even imagine that, considering defendant's high BAC reading and the circumstances surrounding the accident, the expert might reasonably have testified that it was highly unlikely for defendant's BAC to have been below 0.08 while he was driving.

¶ 10. ■ In reality, however, the expert offered no credible reason why her assumed elimination rate was reliable as applied to defendant, nor did she testify as to the likelihood that defendant's BAC was below 0.08 while driving. Given these gaps in the expert's logic, the trial court's reliability finding was not error, much less clear error.

*Affirmed.*